**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ROSALIND MINAHAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 3:12-CV-30203-MAP** |
| TOWN OF EAST LONGMEADOW | ) | |
| KATHLEEN TRANGHESE, | ) | |
| NICHOLAS BREAULT, JAMES | ) | |
| DRISCOLL, ENRICO VILLAMANO, | ) | |
| THOMAS CALIENTO, ROBYN | ) | |
| MACDONALD and PAUL FEDERICI, | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION

### September 11, 2014

Hennessy, M.J.

By order of reference, (Docket #76), and pursuant to 28 U.S.C. § 636(b)(1)(B), this matter was referred to me for a Report and Recommendation on the Defendants' Motion to Dismiss (Docket #68). Plaintiff filed an opposition to Defendants' Motion to Dismiss (Docket #72). The parties appeared before the Court on June 24, 2014, for a hearing on the motion (Docket #81). This matter is now ripe for adjudication. For the reasons that follow, I RECOMMEND that the Defendants' Motion to Dismiss be GRANTED as to Counts I, II, III, VI, and VII. I RECOMMEND that the Motion to Dismiss be DENIED as to Count IV with respect to the claims against the Town of East Longmeadow, the Board of Selectmen, James Driscoll, and Enrico Jack Villamano for Family and Medical Leave Act interference pursuant to 29 U.S.C. § 2615(a)(1) and that the Motion to Dismiss be GRANTED as to Count IV in all other respects. I further RECOMMEND that the Motion to Dismiss be DENIED as to Count V with

respect to the claims against the Town of East Longmeadow, the Board of Selectmen, James Driscoll, and Enrico Jack Villamano for wrongful termination in violation of public policy with respect to Plaintiff's assertion of rights under the Family and Medical Leave Act and that the Motion to Dismiss be GRANTED as to Count V in all other respects.

## I. BACKGROUND

### Denial of Minahan's Re-grade Requests by the Town

This case arises from Plaintiff Rosalind Minahan's ("Minahan") termination of employment by the Defendant, Town of East Longmeadow (the "Town").[1] Minahan, who was fifty-six years old when her employment was terminated, had worked for the Town for nearly twenty years in the Accounting Department, and had most recently held the position of a Payroll/Benefits Administrator. (Docket #62, par. 11). From 2008 to 2012, Minahan applied for position re-grades, and all of Minahan's requests were denied.[2] (Id., par 12). Minahan experienced anonymous public ridicule on MassLive, a local media outlet, for her re-grade requests. (Id., par. 13). In June 2008, the Town and Nick Breault ("Breault"), a Town employee, issued a new re-grade request policy, which Minahan followed when she made her subsequent re-grade requests. (Id., pars. 4, 14). Olga Bones ("Bones"), a similarly situated co-applicant, also followed this new policy in making re-grade requests. (Id.). Bones' re-grade request was approved by the Town on October 10 2010, while Minahan's re-grade request was denied. (Id., par 15). Other Town employees under the ages of forty and forty-five were

---

[1] Minahan uses acronyms to refer to the various parties throughout the Complaint. This procedure has not, in any way, simplified review of this action.

[2] Minahan does not allege how many position re-grade requests she made during this period.

approved for position re-grades even though they did not follow this new policy when they made their requests.[3]  (Id., par. 16).

On May 9, 2009, Kathleen Tranghese ("Tranghese"), through her unincorporated entity K&D Human Resources Consulting, contracted with the Town to perform a variety of human resources services, among which was developing an employee handbook.  (Id., par. 17).  During several public meetings in 2009 and 2010, Minahan expressed her concern that Tranghese did not produce the employee handbook, which created animosity by Tranghese towards Minahan.  (Id., par. 18).  On February 9, 2010, Minahan received a letter from Breault and the Board of Selectmen ("Selectmen")[4], again denying her re-grade request.  (Id., par. 19).  In February 2010, Minahan filed a grievance with the Town for failure to afford her notice and a fair hearing, subjecting her to disparate treatment, and continuously misrepresenting that she was unworthy of a position re-grade.  (Id.).

**Anonymous Letter sent to Minahan**

On April 22, 2010, Minahan received an anonymous letter dated April 21, 2010, addressed to "Roz in Accounting" and references "your friends from the Library."  (Id., par. 20).  This letter was generated by a computer but was placed in a handwritten envelope.  (Id.).  The letter's words were hostile, discriminatory, threatening, and intimidating.  (Id.).  Thomas Caliento ("Caliento"), Minahan's direct supervisor, told Minahan that the Town would commence an investigation regarding this anonymous letter.  (Id., pars. 11, 20).  Minahan

---

[3] These younger Town employees were identified as three individuals: Penny Trembley (Police Department employee under age 40); Courtney Llewellen (library employee under age 40); and Marge LaRocca (secretary under age 45).  (Docket #62, par. 16).

[4] Even though Board of Selectmen was named as a defendant in Minahan's initial complaint, it is not named under the section entitled "PARTIES" as a defendant at the outset of her fourth amended complaint.  However, Minahan refers to Selectmen as one of the defendants in Counts II and IV of her fourth amended complaint.  As the Selectmen are simply a branch of the Town, this distinction is one of little import.  However, the Court notes that Minahan's failure to comply with Federal Rule of Civil Procedure 10(a), which instructs that the caption of a complaint "must name all the parties," has led to unnecessary confusion.

thought she recognized the handwriting on the envelope, and sought to compare this handwriting to a W-4 form of a Town employee. (Id., par. 21). Minahan asked Tranghese if she could look at this W-4 form, redact any private information, and make a copy of it. (Id.). Tranghese approved Minahan's redaction and copying of the W-4 form. (Id.).

On April 22, 2010, Sergeant Bates of the Town's Police Department received the redacted W-4 form, which belonged to Robyn MacDonald ("MacDonald"), a Town employee, and reported the harassing letter and its potential author. (Id., pars. 8, 22). On April 27, 2010, Minahan and her husband met with Chief Douglas Mellis of the Town's Police Department, who agreed that the letter was threatening, intimidating, and the handwriting substantially matched that of MacDonald. (Id., par. 22). Chief Douglas suggested that Minahan place the Town on notice of a hostile work environment. (Id.). On April 28, 2010, Minahan filed a complaint with Caliento regarding the hostile work environment. (Id.). On April 28, 2010, after speaking with Caliento, Tranghese told Minahan that redacting a co-worker's W-4 form was unlawful and informed her that Minahan might be disciplined for this conduct. (Id., par. 23). Tranghese denied having any knowledge of or authorizing Minahan's redaction of the W-4 form. (Id.). Tranghese also did not acknowledge the fact that Minahan gave a copy of the W-4 form to the Town police for a handwriting comparison to be made. (Id., par. 26).

On June 1, 2010, Minahan received a letter from the Town, falsely claiming that Minahan used the W-4 form of a Town employee without authorization and for her personal use and imposing a two-day suspension to occur on June 23, 2010 for her conduct. (Id., par. 27). Following the receipt of this letter, Minahan filed a complaint/grievance for bad faith discipline, as well as harassment, hostile work environment, retaliation, and procedural unfairness, which she perceived to be a pretext to retaliation, age discrimination, and interference with her

employment rights. (Id.). Minahan was never fairly interviewed and confronted, MacDonald's handwriting on the envelope was not properly reviewed, and MacDonald's computer was not adequately searched. (Id., par. 29). On August 2010, Minahan received the Selectmen's written findings concerning her grievances and complaints. (Id., par. 24). In these findings, Tranghese, Breault, James Driscoll ("Driscoll"), a Town employee and member of the Selectmen, the Selectmen, and the Town alleged that Minahan attempted to circumvent an employment investigation and committed privacy and misuse of office crimes in violation of Mass. Gen. Laws ch. 4, §7(26). (Id.). Minahan categorized these allegations as false statements of material facts, as well as reckless, malicious, libelous, and defamatory. (Id.).

### Discrimination and Retaliation against Minahan

On July 10, 2010, the Town promulgated Policy No. BOS-101.[5] (Id., par. 28). This policy contained information about workplace discrimination and harassment and outlined the process for filing complaints for discrimination and harassment. (Id.). Minahan made specific references to false accusations made by the Town against her in the complaints and grievances that she filed. (Id.). Minahan highlighted the fact that Policy No. BOS-101 was not recognized, considered, or enforced on her behalf by the Town, which she perceived to be further evidence of age discrimination and retaliation. (Id.).

Minahan perceived the investigations, findings, and disciplinary actions of the Town (as well as Breault, Caliento, MacDonald and Tranghese) in connection with her protected employment activity from April 2010 to July 2011 to be biased, arbitrary, and in bad faith. (Id., par. 29). She found the factual and legal conclusions reached by Tranghese, the Selectmen, Breault, Driscoll, Caliento, MacDonald, and Enrico Jack Villamano ("Villamano"), an employee

---

[5] The policy states that "any employee who makes willful or malicious accusations that upon investigation are found to be false, will be disciplined accordingly, up to and including termination of employment." (Docket #62, par. 28).

of the Town and member of the Selectmen, regarding her illegal conduct in relation to the anonymous letter to be objectively unreasonable. (Id., pars. 6, 25). She categorized the investigation undertaken by the Town as biased, because Tranghese was the only fact finder in the investigation, constituting further evidence of pretext for discrimination and retaliation against Minahan. (Id., par. 25 ). Minahan states that her continued exercise of protected speech, complaints, and grievances regarding the Town's discriminatory and retaliatory investigations and decisions were directly related to her termination of employment. (Id., par. 29).

On July 26, 2010, the Selectmen conducted a grievance hearing concerning Minahan's two-day suspension as well as her complaints regarding harassment, misrepresentation, hostile work environment, violation of Policy No. BOS-101, and the controversial and false findings made by the Town and the individual defendants. (Id., par. 30). Minahan complained to Caliento for changing his support for Minahan's re-grade requests on and before October 2010. (Id., par. 31). Minahan also filed formal complaints with Caliento about serious and recurring accounting issues which subjected her to a potentially negative tax audit. (Id.). After making formal complaints, Minahan was further isolated and treated in a curt and hostile manner by Caliento. (Id.).

Minahan also overheard some discriminatory and hostile comments made by Caliento, Tranghese, Driscoll, and Villamano. (Id.). Minahan perceived these comments to be discriminatory on the basis of her age. (Id.). She complained to Caliento that she was discriminated against because of her age, based on the Selectmen's false and biased findings about her. (Id., par. 32). Caliento did not take any action concerning this complaint. (Id.). Minahan states that the Town and individual defendants have committed acts of discrimination and retaliation since 2008 to present, on a continuous basis. (Id., par. 34).

### Minahan's Disability Leave and Termination

On December 17, 2010, after a pointed discussion with Caliento, Minahan suffered a severe emotional breakdown and was forced to leave work and seek immediate medical attention. (Id., par. 33). Minahan looked for Caliento and Breault before she left work, did not find them, and then told Bones, who was next in charge, that she had to leave work. (Id.). Minahan notified Caliento and the Town before she left work. (Id.). Breault witnessed Minahan leave the building while uncontrollably crying. (Id.). Following this event, Minahan was medically diagnosed with a serious health condition, treated, and advised by her doctor to take time off from her employment. (Id.). Later that day, Bones delivered Minahan's medical note to Caliento in person. (Id.).

On December 17, 2010, Minahan requested a reasonable accommodation from the Town, including a leave of absence pursuant to the Family Medical Leave Act of 1993 ("FMLA"). (Id., par. 35). On January 13, 2011, Minahan received an FMLA Designation Form and Certification of Health Care provider. (Id.). On January 31, 2011, Minahan returned these forms to the Town along with her doctor's note, seeking to extend her leave until April 4, 2011. (Id.). On February 10, 2011, Corrine Tranghese, a Town human resources employee, confirmed the Town's receipt of Minahan's doctor's note. (Id.). Minahan later made available to the Town another doctor's note of March 25, 2011, which recommended extended leave to treat her health condition beyond April 4, 2011. (Id.).

On March 28, 2011, Minahan requested another leave of absence without pay and/or extended leave from the Town, Caliento, and Tranghese. (Id.). That same day, Minahan received a certified letter from the Town informing her that her FMLA leave had expired on March 11, 2011. (Id., par. 36). The letter enclosed an FMLA Designation Notice dated February

10, 2011.  (Id.).  Minahan states that the Town's delay in notifying her that the FMLA leave had expired caused her harm, and because she had communicated the seriousness of her health condition to the Town, it was foreseeable that her leave would be extended, and such an extension was also recommended by her physician.  (Id.).

On March 30, 2011, Minahan received a letter from Breault notifying her that the Town and the Selectmen were considering terminating her employment and a hearing would be held on April 1, 2011.  (Id., par. 37).   Minahan was unable to attend this hearing for medical reasons. (Id.).  Minahan asserts that with only a day's notice about the hearing, she was not given any meaningful opportunity to respond to the allegations regarding her medical leave and absence from work.  (Id.).  These allegations stated that Minahan did not report to work after leaving work on December 17, 2010, left work without notice on December 17, 2010, and did not supply medical documentation as requested by the Town.  (Id.).   On April 1, 2011, Minahan's employment was terminated by the Town due to her conduct over the last four months.  (Id.).

**Massachusetts Commission Against Discrimination ("MCAD") Investigation**

On April 14, 2011, Minahan filed a complaint with Massachusetts Commission Against Discrimination ("MCAD").  (Id., par. 38).  On October 20, 2011, Minahan withdrew her MCAD complaint and received a Notice of Dismissal by MCAD.  (Id.).  Minahan did not receive a right-to-sue letter from the Equal Opportunity Employment Commission ("EEOC").  (Id.).   On November 23, 2012, Minahan filed the instant lawsuit.  (Id.).

**II. STANDARD OF REVIEW**

Fed. R. Civ. P. 8(a) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim."

Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). "Rule 12(b)(6) serves to provide a mechanism to test the sufficiency of the complaint." Godin v. Schencks, 629 F.3d 79, 89 (1st Cir. 2010). When evaluating a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), courts must "assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." Comeau v. Town of Webster, 881 F. Supp. 2d 177, 181 (D. Mass. 2012) (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)) (alterations omitted).

In resolving a motion to dismiss, courts should utilize a two-pronged approach. Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales–Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010).

"[Plausability] is not a 'probability requirement,' but it does require 'more than a sheer possibility that a defendant acted unlawfully.'" Air Sunshine, Inc. v. Carl, 663 F.3d 27, 33 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When making a plausibility determination, courts are allowed "to draw on [their] judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). However, "a court [may not] attempt to

forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if a recovery is very remote and unlikely.'" Ocasio-Hernandez, 640 F.3d at 12-13 (quoting Twombly, 550 U.S. at 556) (internal alterations omitted). Moreover, "the complaint should be read in its entirety and 'not parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 25 (1st Cir. 2014) (quoting Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)).

Despite the settled two-step approach a court employs to resolve a motion to dismiss generally, in the employment discrimination context a complaint need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth … in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 (2002). In Swierkiewicz v. Sorema, N.A., the Court rejected the argument that a Title VII plaintiff must plead a prima facie case of employment discrimination to survive a motion to dismiss. Id. The Court noted that a "prima facie case under McDonnell Douglas … is an evidentiary standard, not a pleading requirement." Id. at 510. As the First Circuit recently noted, Swierkiewicz is good law, despite the Court's more recent pronouncements in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2007). Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) ("[N]one of our post-Swierkiewicz cases have required the pleading of specific facts sufficient to establish each and every element of a prima facie case."). Rather, on a motion to dismiss, a court determines whether the complaint is "facially plausible and … give[s] fair notice to the defendants of the basis for the claim." Williams v. Shinseki, No. 11-40030-TSH, 2013 WL 1336360, at *3 (D. Mass. Mar. 29, 2013) (quoting Twombly, 550 U.S. at 547). In this regard, the elements of a prima facie case still factor in resolving a motion to dismiss: they "are part of the background against which a plausibility determination should be made."

<u>Rodriguez –Reyes</u>, 711 F.3d at 54.  In sum, although a plaintiff need not plead sufficient facts to establish a prima facie case, a plaintiff still must plead enough facts to make the entitlement to relief plausible in light of the prima facie evidentiary standard.  <u>Id.</u>

## III. ANALYSIS

### Count I – Age Discrimination and Retaliation

In Count I, Minahan claims that, based on Minahan's age, the Town discriminated against her, in violation of both federal and state law.  Defendants move to dismiss Count I, contending that the complaint lacks allegations that Minahan's age was the reason for adverse employment actions, and that some allegations are time-barred.

**A.      Age Discrimination Claim under Title VII**

Minahan alleges that the Town violated Title VII of the Civil Rights Act of 1964 in discriminating against Minahan on the basis of her age.  Title VII provides that an employer may not "discharge any individual, or otherwise [] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  Here, Minahan does not allege that Defendants discriminated against her on the basis of race, color, religion, sex, or national origin.  Accordingly, insofar as her claim in Count I is based on Title VII, it is not plausible.  <u>See</u> <u>Lennon v. Rubin</u>, 166 F.3d 6, 8 (1st Cir. 1999) (age discrimination and retaliation claims not cognizable under Title VII based on the plain language of the statute).  This component of Count I should be dismissed.

**B.      Age Discrimination Claim under 29 U.S.C. § 623(a)**

Minahan also invokes the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a) to allege age discrimination.  She alleges that at least two forms of adverse employment

action were based on age discrimination:  her termination and her denial of "position regrades."[6]

Section 623(a) makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]."   In evaluating Minahan's claim, this court uses that analytical framework outlined by the Court in McDonnell Douglas.  At this juncture, only the initial stage of McDonnell Douglas is relevant, which requires the plaintiff to establish a prima facie case of discrimination.   McDonnell Douglas, 411 U.S. at 802.  As noted above, this standard will be used not to require specific factual allegations, but as a "prism to shed light upon the plausibility of the claim." Rodriguez-Reyes, 711 F.3d at 54.

        A prima facie case of age-based termination requires a plaintiff to show: (1) she was at least forty years old at the time of discharge; (2) she was qualified for the position but (3) she was nevertheless fired; and (4) that the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services."   Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009).  A prima facie case of an age-based failure to promote differs only slightly from a termination – instead of demonstrating that she was fired, a plaintiff must show that she was qualified for an open position for which she applied, but was rejected in favor of someone possessing similar qualifications.   Chouinard v. N.H. Dep't of Corr., 157 Fed. Appx. 322, 323 (1st Cir. 2005).  In either case, "[a] plaintiff asserting a claim under the ADEA has the burden of establishing 'that age was the 'but-for' cause of the employer's adverse action.'" Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)).

---

[6] Minahan fails to explain what a position re-grade is.  The Court is left to assume that it connotes an increase in pay and therefore that a denial for such a request is an adverse job action.

Minahan's factual allegations establish, for purposes of this motion, that she was over forty years of age, qualified for her job, and suffered two forms of adverse employment action: termination and denial of position re-grades. Dealing first with her termination, Minahan proffers no facts about the age of her replacement or the qualifications or lack thereof of her replacement that would establish, or even permit an inference, that age was the "but for" cause of her termination. Her allegation that the Town "searched and found [her] replacement," (Docket #62, par. 42), is insufficient to render her entitlement to relief plausible: her replacement may have been over forty years of age. The plausibility of an age discrimination claim depends in no small part on allegations about the age of a replacement. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311-12 (1996) (prima facie case of age discrimination may only be inferred when plaintiff is replaced by someone who is "substantially younger"); Shinseki, 2013 WL 1336360, at *4-5 (granting a motion to dismiss ADEA claim where the complaint offered no facts about the age of plaintiff's replacement); Hillstrom v. Best W. TLC Hotel, 265 F. Supp. 2d 117, 124 (D. Mass. 2003) ("Under federal law, a plaintiff need not have been replaced by a person outside the protected class, only by someone 'substantially' younger."). The absence of allegations about the age of Minahan's replacement essentially prevents any inference that age was the reason for Minahan's termination. Minahan's otherwise conclusory allegations (scattered throughout the complaint) - for instance, that she was terminated "substantially because of her age, and her age, was a determining factor for the adverse actions taken against her in 2010 and 2011, by defendants," (Docket #62, par. 42) - are too meager to make entitlement to relief plausible.

Minahan's allegations regarding position re-grades suffer from the same infirmity. To the extent there are factual allegations to support her age-based claim regarding re-grades, they

are insufficient. Minahan alleges that an employee named Bones was granted a re-grade request, but the complaint does not allege Bones' age; to the contrary, it describes Bones and Minahan as "similarly situated co-applicants for re-grade requests." (Docket #62, par. 14). Hence, there is no basis to infer that the denial of position re-grades can be traced to age discrimination beyond Minahan's conclusory assertions of age-based motive. Similarly, Minahan alleges that her requests for a position re-grade were denied while the requests of younger employees were allowed. (Id., par. 16). She further alleges the age and identity of some of these "younger [] employees:" "Penny Tremblay, under age 40; … Courtney Llewellen, under age 40; … Marge LaRocca, under age 45." Id. However, she fails to allege additional facts that would make her claim for relief plausible, such as when the younger employees were granted re-grades, and whether or not such employees were qualified for re-grades.

To be sure, there are other allegations in the complaint which link events or actions to alleged age discrimination, but far from helping Minahan's pleading obligation of showing a plausible entitlement to relief, they further demonstrate the deficits in her pleading. For instance, Minahan alleges that she "was subjected to anonymous public ridicule on … a local media outlet, essentially chastising [Minahan for her re-grade requests]" which Minahan believed were "discriminatory references to her age and future pension rights," and which the Town "tacitly approved" and "conspicuously uninvestigated." (Id., par. 13). Among other things, Minahan fails to allege: the content of the broadcasted statements; that this constituted adverse employment action; the identity of who "tacitly approved" statements (or, for that matter, what that means) and who failed to investigate; and that there was a duty to investigate. Hence, the allegation fails to place the Town on notice of what it is alleged to have done to violate the ADEA.

Minahan alleges that she was suspended from work for two days and threatened with criminal prosecution when she accessed another employee's W-4 form in an attempt to prove authorship of a threatening letter she received. (Id., pars. 20-27). Minahan alleges that defendant Tranghese had authorized Minahan's access to and use of the W-4. (Id., par. 21). When Tranghese and other defendants later investigated Minahan's W-4 conduct and disciplined her, it was, in Minahan's view, a pretext for age discrimination. (Id., par. 25). This bald allegation linking discipline and the threat of criminal prosecution to age discrimination is entirely a conclusion, and fails to allege facts showing a plausible entitlement to relief.

Finally, Minahan alleges that when she filed a complaint about "serious accounting issues … certain comments were made … and overheard which were discriminatory… and perceived" as supporting a belief "that defendants could be discriminating against her on the basis of her age." (Id., par. 31). As it sounds, this allegation is conclusory, lacks any factual support, and fails to put defendants on notice of the basis for the claim.

In sum, the complaint is too conclusory and meager to make an entitlement to relief on under the ADEA plausible. This component of Count I should be dismissed.

## C.     Age Discrimination Claim under Mass. Gen. Laws ch. 151B, § 4(1C)

In Count I, Minahan also alleges that the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B, § 4(1C), has been violated by defendants.[7] Her citation does not recite or refer to any specific or additional allegations. The court focuses its review on the sufficiency of the complaint's factual allegations in light of the prima facie evidentiary standard.

---

[7] Mass. Gen. Laws ch. 151B, §4(1C) provides that is shall be an unlawful practice "[f]or the commonwealth or any of its political subdivisions, by itself or its agent, because of the age of any individual, to refuse to hire or employ or to bar or discharge from employment such individual in compensation or in terms, conditions or privileges of employment unless pursuant to any other general or special law." Mass. Gen. Laws ch. 151B, §4(1C).

Under Massachusetts law, "[i]n order to prevail on an age discrimination claim, a plaintiff must prove four elements: (1) membership in the protected class; (2) harm; (3) discriminatory animus; and (4) causation." Singleton v. Sinclair Broad. Grp., Inc., 660 F. Supp. 2d 136, 150 (D. Mass. 2009); see Lipchitz v. Raytheon Co., 434 Mass. 493, 502 (2001). As with the ADEA claim, this court evaluates Minahan's state claim under the McDonnell Douglas analytical framework, which, at this juncture, requires that Minahan establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. As noted above, this standard will be used not to require specific factual allegations, but as a means of assessing the plausibility of the claim. Rodriguez-Reyes, 711 F.3d at 54; Singleton, 660 F. Supp.2d at 150.

To establish a prima facie case of discrimination, a plaintiff must prove by a preponderance of the evidence that "(1) [she] was a member of the protected class; (2) [she] was qualified for the position in question; (3) [she] was denied the position; and (4) [her] employer sought to fill the position by hiring a younger individual with qualifications similar to those of the plaintiff." Sullivan v. Raytheon Co., 262 F.3d 41, 48 (1st Cir. 2001) (quoting Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327-28 (1st Cir. 1996)). As a general matter, an age disparity of less than five years between the plaintiff and its replacement, by itself, is too insignificant to support a prima facie case of age discrimination. Knight v. Avon Products, Inc., 438 Mass. 413, 425 (2003).

While Minahan alleges membership in the protected class (over forty years of age), qualification, and adverse job action, her factual allegations are not sufficient to establish the fourth element of the prima facie case under Mass. Gen. Laws ch. 151B, § 4(1C). Minahan specifically fails to provide the age of her replacement, and thus any basis for an inference of age

discrimination.  See O'Connor, 517 U.S. at 311-12; Knight, 438 Mass. at 423.  This insufficiency renders her claim implausible.  Her state age discrimination claim should therefore be dismissed.

**D.      Retaliation Claim under the ADEA**

Minahan also alleges that defendants retaliated against her in violation of the ADEA, 29 U.S.C. § 623(d).[8]  As circumstantial evidence of retaliation by the Town, she mentions the failure to "recognize[], consider[] or enforce[] on [Minahan's] behalf" Policy No. BOS-101, as well as the investigations of her undertaken regarding her use of the W-4 form.  (Docket #62, pars. 28, 30-31).  She further states that her continued exercise of protected speech, complaints, and grievances regarding the Town's discriminatory and retaliatory investigations were directly related to the termination of her employment.  (Id., par. 29).  Defendants argue that Minahan's claims are implausible for four main reasons.  (Docket #69, pp. 24-26).  First, there is no causal connection between Minahan's complaints about "fairness" and "discrimination" and denial of her re-grade requests.  (Id., p. 24).  Second, Minahan did not engage in any protected activity when she complained about the anonymous letter that she received.  (Id.).  Third, even if Minahan's complaints could be construed as a protected activity, she fails to allege a causal connection between filing complaints and any adverse employment action.  (Id., p. 25).  Fourth, Minahan has not demonstrated a causal connection between requesting a medical leave and her termination.[9]  (Id., pp. 25-26).

Under the McDonnell Douglas framework, where there is no direct evidence of retaliation by the defendant, the plaintiff must first make a prima facie showing that: (1) she

---

[8] 29 U.S.C. § 623(d) provides, "[i]t shall be unlawful for an employer to discriminate against any of his employees or applicants for employment … because such individual … has opposed any practice made unlawful by this section, or because such individual … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act."  29 U.S.C. § 623(d).

[9] This argument involves the Town's alleged retaliatory conduct against Minahan for taking a qualified medical leave under the FMLA, and therefore is more appropriate to consider in the analysis under Count IV.

engaged in protected conduct under ADEA; (2) she was thereafter subjected to an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action. Munoz v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P. R., 671 F.3d 49, 55 (1st Cir. 2012). Even though defendants argue otherwise, internal grievances constitute protected activity under ADEA. See Bennett v. Saint-Gobain Corp., 453 F. Supp. 2d 314, 332 (D. Mass. 2006), aff'd, 507 F.3d 23 (1st Cir. 2007).

Minahan engaged in protected conduct under ADEA by filing complaints and grievances with the Town. She was also subjected to adverse employment actions - her termination on April 1, 2011 and the denials of her re-grade requests. However, Minahan has not shown a causal link between the protected activity in which she engaged and the adverse employment actions. The earliest date on which she filed a grievance with the Town appears to be in February 2010, after the denial of her re-grade request.[10] (Docket #62, par. 19). However, she also alleges that she was generally subject to acts of retaliation from 2008 to 2012, on a continuous basis, in a series of separate acts. (Id. par. 34). Given that the Town's retaliatory acts started in 2008, two years before she filed her first grievance, there is no temporal proximity between the protected activity and the retaliation to give rise to a plausible retaliation claim under ADEA. See Mole v. Univ. of Mass., 442 Mass. 582, 594 (2004) ("Where, as here, adverse employment actions or other problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by

---

[10] To the extent that Minahan alleges that the 2009 grievance was the first of a number of grievances that she filed for denials of re-grade requests, the subsequent grievances are insufficiently plead.

retaliation."), quoted in McCray v. H&R Block E. Enters., Inc., No. 04-12232-PBS, 2006 WL 1308181, at *7 (D. Mass. May 10, 2006).[11]

Therefore, aside from conclusory legal statements that Minahan "was subject to a discriminatory compensation decision" and the Town's "age discrimination animus was willful and knowing in violation of the anti-retaliation provision of ADEA," Minahan has not established a causal link between protected conduct and the Town's adverse employment actions. Minahan has not asserted any plausible claim for a violation of 29 U.S.C. § 623(d) and thus her retaliation claim under ADEA against the Town should be dismissed.

**E.     Disparate Impact**

Minahan asserts a claim for disparate impact under Mass. Gen. Laws ch. 151B § 4(17)(a). This section provides:

> it shall not be an unlawful employment practice for any … employer … to … observe the terms of a bona fide seniority system or any bona fide employee benefit plan … which is not a subterfuge to evade the purposes of this section, except that no such employee benefit plan shall excuse the failure to hire any person, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any person because of age ….

Id. (emphasis added). Minahan has failed to allege the existence of any bona fide seniority system or bona fide employee benefit plan. Nor does this section place any affirmative responsibility on employers, it merely denotes activity that would not be unlawful. Hence, Minahan cannot state a cause of action under Mass. Gen. Laws ch. 151B § 4(17)(a) and her claim should be dismissed.

---

[11] At oral argument, Minahan's counsel stated that the complaint contained an error at paragraph 19, and the date of Minahan's re-grade grievance should be February 2009, and not 2010. Every other date in paragraph 19 is February 2010, and one would think that at the fourth iteration of the complaint, Minahan might get this right. However, accepting that correction does not necessarily support the causal link or inference that the grievance caused the retaliation since Minahan alleges that the retaliation began in 2008.

**F.     Age Discrimination Claims and Statute of Limitations**

Defendants argue that, even if Minahan is able to sufficiently plead an age discrimination claim, her age discrimination claims under both federal and state law relating to her re-grade requests must be dismissed, because she did not file a timely administrative complaint.  (Docket #69, p. 17).  This Court concludes that it is proper to consider a statute of limitations defense on a motion to dismiss, and hence will determine the applicability of the Town's affirmative defense.[12]

Prior to filing in court a suit alleging age discrimination, a plaintiff must first exhaust administrative remedies.  The MCAD has initial jurisdiction over state and federal claims under the EEOC's deferral policy.  Alston v. Mass., 661 F. Supp. 2d 117, 122 (D. Mass. 2009).  An employee asserting claims in violation of either federal or Massachusetts age discrimination laws must file charges with the MCAD within 300 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B); Mass. Gen. Laws ch. 151B, § 5; see Krause v. UPS Supply Chain Solutions, Inc., No. 08-cv-10237-DPW, 2009 WL 3578601, at *6 (D. Mass. Oct. 28, 2009).  "[F]ailure to comply with an agency's applicable time limit may expose the plaintiff's federal law suit to dismissal."  Farris v. Shinseki, 660 F.3d 557, 562-63 (1st Cir. 2011).

"An employment discrimination claim accrues when the employee has unequivocal notice of some harm resulting from an allegedly discriminatory act."  McAleer v. Prudential Ins. Co. of Am., 928 F. Supp. 2d 280, 284 (D. Mass. 2013) (collecting cases).  "[T]he statute of limitations begins to run at the time of the allegedly discriminatory decision, even if the

---

[12] As a general rule, "because affirmative defenses must be proved by the defendant, it [i]s inappropriate to raise these defenses on a motion to dismiss."  Laverty v. Massad, 661 F. Supp. 2d 55, 62 (D. Mass. 2009).  However, the First Circuit has held that "[g]ranting a motion to dismiss based on a [statute of] limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred."  LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998).

plaintiff's employment continues, and the consequences of the allegedly discriminatory act … do not occur until later." Id. at 285 (citing Del. State Coll. v. Ricks, 449 U.S. 250, 257-58 (1980)). "The First Circuit has held that, as in other employment discrimination actions, the limitations period in ADEA cases begins to run when an employee 'knows that he has been hurt and also knows that his employer has inflicted the injury.'" Commonwealth v. Bull HN Info. Sys., Inc., 143 F. Supp. 2d 134, 152 (D. Mass. 2001) (quoting Am. Airlines v. Cardoza-Rodriguez, 133 F.3d 111, 123 (1st Cir. 1998)). Here, Minahan's claim for employment discrimination as it relates to her re-grade requests accrued when she was first put on notice by the Town that her position re-grade request was denied. Minahan was well aware of any potential age discrimination regarding the re-grade requests, which is evident in her comparisons to both younger employees and a similarly situated co-applicant. The statute of limitations for her federal and state law claims began to run when her position re-grade request was denied, on February 9, 2010, even though the termination of her employment occurred approximately two years later. However, as alleged in the complaint, Minahan did not file a claim with MCAD until April 14, 2011, over 400 days after the denial of her re-grade requests. (Docket #62, par. 38).

To avoid a statute of limitations bar, Minahan relies on a continuing violation theory, that is, that the strict time requirements to file with MCAD do not apply where the facts in the complaint indicate the discrimination was of a continuing nature. (Docket #72 p. 15). She characterizes this discrimination as a "series of separate acts collectively constitut[ing] an unlawful employment practice." (Docket #62, par. 34). The "[c]ontinuing violation" doctrine "allows plaintiffs to succeed on otherwise time-barred claims in recognition of the fact that sometimes, a plaintiff 'may be unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory

pattern.'" Crevier v. Town of Spencer, 600 F. Supp. 2d 242, 258-59 (D. Mass. 2008) (quoting

O'Rourke v. City of Providence, 235 F.3d 713, 732 (1st Cir. 2001)). The First Circuit has

identified the following criteria to be used to evaluate the sufficiency of a continuing violation

claim:

> (1) whether the subject matter of the discriminatory acts was sufficiently similar
> such that there was a substantial relationship between the otherwise untimely acts
> and the timely acts; (2) whether the acts were isolated and discrete or occurred
> with frequency or repetitively or continuously; and (3) whether the acts were of
> sufficient permanence that they should have triggered an awareness of the need to
> assert one's rights.

Id. at 259. However, this doctrine is inapplicable "if, at any point prior to the limitations period,

plaintiff was or should have been aware of the discriminatory practice" or "if the plaintiff admits

that at the time she knew that she was the victim of discrimination." Id. Minahan was clearly

aware of any discriminatory conduct with respect to the re-grades as of February of 2010 as

demonstrated by the grievance she filed with the Town following the denial of re-grade request.

(See Docket #62, par. 19). Thus, she has failed to assert a continuing violation claim.

In summary, Minahan should have filed a complaint with MCAD within 300 days of the

denial of her re-grade request to comply with the statute of limitations. See Alston, 661 F. Supp.

2d at 123 (Chapter 151B claims barred when plaintiffs filed an MCAD complaint three years

after termination of employment); Campbell v. BankBoston, N.A., 327 F.3d 1, 10-11 (1st Cir.

2003) (ADEA claim barred because plaintiff's EEOC charge was filed beyond the 300 day

limitations period). Thus, Minahan's federal and state age discrimination claims with respect to

the re-grade requests are barred by the statute of limitations and should be dismissed.[13]

---

[13] At oral argument, counsel for Minahan argued that Minahan became conclusively aware of age discrimination
based on re-grade requests when Bones' request was allowed on October 10, 2010. As previously noted, the
complaint fails to allege Bones' age, and thus to plead facts that support this argument. Counsel also argued that
there were ongoing denials of Minahan's re-grade requests through 2012, thus establishing a continuing violation.
However, Minahan has failed to proffer facts about these other re-grade requests, and conclusory allegations are

### Count II - Retaliation

**A.     Title VII**

To the extent that Minahan asserts claims of retaliation under Title VII pursuant to 42 U.S.C. § 2000e-3(a), those claims must be dismissed for those reasons stated above in section I(A).  Minahan does not allege that she opposed practices, filed charges, or participated in any investigation concerning race, color, religion, sex, or national origin, as required by Title VII. Accordingly, Minahan's Title VII claims should be dismissed.

**B.     Mass. Gen. Laws ch. 151B, § 4(4)**

Minahan alleges that the Town and individuals retaliated against her in violation of the Massachusetts Anti Discrimination Act, Mass. Gen. Laws ch. 151B, § 4(4).[14]

To establish a prima facie case for retaliation, plaintiff must show that: (1) she engaged in conduct protected under Massachusetts law; (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action.  See Sullivan, 262 F.3d at 48.  By filing an internal grievance and/or a complaint with her supervisor, Caliento, Minahan engaged in conduct protected under Massachusetts law.  See Bennett, 453 F. Supp. 2d at 332.  She was subjected to adverse employment actions when she was terminated and when her requests for re-grades were denied.  Although Minahan can establish the first two elements of a prima facie case of retaliation under Mass. Gen. Laws ch. 151B, § 4(4), she has not alleged facts showing a causal link between her complaints of discriminatory action and the adverse employment actions.  Minahan merely states a conclusion of law, that "there was a

---

insufficient.  Moreover, Minahan fails to show why each denial is not a discrete act that triggered her obligation to file with MCAD.

[14] Mass. Gen. Laws ch. 151B, § 4(4) makes it unlawful for an employer "to discharge, expel or otherwise discriminate against any person because [s]he has opposed any practices forbidden under this chapter or because [s]he has filed a complaint, testified or assisted in any proceeding under section five."  Mass. Gen. Laws ch. 151B, § 4(4).

causal connection between the protected activity and the adverse actions taken against her including her termination." (Docket #62, par. 45). For this reason, Minahan's retaliation claim under Mass. Gen. Laws ch. 151B, § 4(4) should be dismissed.

Defendants argue that Minahan's state retaliation claim should also be dismissed against the individual defendants, because her allegations are unclear as to which facts are attributable to which defendants. (Docket #69, p. 22). The Court agrees that Minahan's lack of specificity in pleading renders her claims implausible against the individual defendants, and therefore, they should also be dismissed.

**C.      Statute of Limitations**

Defendants argue that, for the same reasons Minahan's age discrimination is time-barred, her retaliation claim under Mass. Gen. Laws ch. 151B, § 4(4) should also be time-barred. (Docket #69, p.26). The undersigned agrees with the defendants for the reasons stated in Section I(F) of this Report and Recommendation with respect to the requests for re-grades.

**D.      42 U.S.C. § 12203(a)-(b)**

Minahan's retaliation claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203(a)-(b)[15], should be dismissed for Minahan's failure to exhaust administrative remedies. Minahan did not obtain a right-to-sue letter from the EEOC prior to filing this present suit. Therefore, the Court shall not undertake any plausibility analysis of her claims under the Iqbal/Twombly framework.

---

[15] 42 U.S.C. § 12203(a) makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(b) makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act."

"[A] claimant who seeks to recover for an asserted violation of Title I of the ADA …

first must exhaust administrative remedies by filing a charge with the EEOC, or alternatively,

with an appropriate state or local agency, within the prescribed time limits." Bonilla v. Muebles

J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999); see 42 U.S.C. § 12203(c) (expressly

adopting for the ADA the procedures set forth in Title VII, specifically the section requiring

receipt of a right-to-sue letter from the EEOC prior to filing a civil claim). "Exhaustion has two

key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue

letter from the agency." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). "Administrative

remedies could not be considered to have been exhausted, however, until the EEOC issue[s]

[plaintiff] a right-to-sue letter." Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85

(1st Cir. 2008) (citing 42 U.S.C. § 2000e–5(f)(1)).

Here, Minahan does not dispute the fact that she did not obtain a right-to-sue letter from

the EEOC. In fact, she explicitly states in her complaint that she did not receive such a letter.

(Docket #62, par. 38). Minahan filed a complaint with MCAD on April 14, 2011. The record

indicates that she did not file any charges with the EEOC. However, a work sharing agreement

between the EEOC and the MCAD allows claims filed with one agency to effectively be filed

with the other. See Browne v. Sodexo, Inc., No. 10-11995-JLT, 2011 WL 2729205, at *2 n.4

(D. Mass. July 5, 2011). "A charge filed with the MCAD automatically becomes filed with the

EEOC 60 days after its filing, or earlier if the MCAD terminates its investigation." Davis v.

Lucent Techs., Inc., 251 F.3d 227, 231 n.1 (1st Cir. 2001) (citing 29 C.F.R. § 1601.13(a)(4)).

Although Minahan did not file a charge with the EEOC, her complaint was automatically filed

with the EEOC on June 14, 2011, sixty days after she filed an MCAD complaint.

Minahan withdrew her MCAD complaint on October 20, 2011, and MCAD issued a Notice of Dismissal to her on the same day. However, MCAD's Notice of Dismissal is not a substitute for EEOC's right-to-sue letter. See Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009) (MCAD's Dismissal Notice merely informed plaintiff that his Title VII claim was to be reviewed by the EEOC; plaintiff still needed to obtain the right-to-sue letter from the EEOC to file a federal lawsuit). Accordingly, the Notice of Dismissal that MCAD issued to Minahan does not authorize her to bring ADA claims in federal court. Therefore, all of Minahan's claims under the ADA, including her retaliation claim, should be dismissed.

Defendants also argue that individual liability does not exist under the ADA. (Docket #69, p.21). Defendants correctly rely on Roman-Oliveras v. Puerto Rico Electric Power Authority, 655 F.3d 43 (1st Cir. 2011), where the First Circuit held that the ADA "addresses the conduct of employers only and does not impose liability on co-workers." Roman-Oliveras, 665 F.3d at 52 (quoting Fantini v. Salem State Coll., 557 F.3d 31, 31 (1st Cir. 2009)).

E.      **Interference Claim**

Minahan asserts an interference claim pursuant to Mass. Gen. Laws ch. 151B, § 4(4A), which makes it unlawful for "any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter." Mass. Gen. Laws ch. 151B, § 4(4A). "[I]nterference with a plaintiff's right to be free from discrimination must be intentional. McLaughlin v. City of Lowell, 84 Mass. App. Ct. 45, 73, rev denied, 466 Mass. 1112 (2013). This provision "independently and explicitly provides

for an interference claim, not merely against employers, but against all persons." Lopez v. Commonwealth, 463 Mass. 696, 706 (2012) (quotation and alteration omitted).

Minahan can show that the individual defendants are "persons" as defined in Mass. Gen. Laws ch. 151, §1(1). However, Minahan does not specify how the individual defendants interfered with her rights under the statute, or coerced, intimidated, or threatened her. Hence, Minahan's claim of interference should be dismissed.

## Count III – Disability Discrimination

### A.      The ADA

All of Minahan's claims under the ADA, 42 U.S.C. §§ 12101 et seq., should be dismissed for the reasons discussed above in section II(D) of this Report and Recommendation.

### B.      Violations of Mass. Gen. Laws ch. 151B, §4(16)

Minahan asserts the Town discriminated against her due to her disability, in violation of Mass. Gen. Laws ch. 151B, §4(16).[16] She states that the Town and the individual defendants failed to provide her with a reasonable accommodation when they refused to grant her requests for extended leave, failed to initiate an informal interactive process or make an individualized inquiry about her requests, and failed to consider the possibility of transferring her to vacant jobs. (Docket #62, par. 50).

In order to prove that a defendant failed to provide a reasonable accommodation, a plaintiff must demonstrate that: "(1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) with or without reasonable accommodation, he was a

---

[16] Mass. Gen. Laws ch. 151, § 4(16) prohibits "any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business."

qualified individual able to perform the essential functions of the position involved and (3) the employer, despite knowing of his disability, did not reasonably accommodate it." <u>Fiumara v. President & Fellows of Harvard Coll.</u>, 526 F. Supp. 2d 150, 156 (D. Mass. 2007), <u>aff'd</u>, 327 Fed. Appx. 212 (1st Cir. 2009). "Unlike other discrimination claims, a failure to accommodate claim 'does not require that an employer's action be motivated by a discriminatory animus directed at the disability.'" <u>Crevier</u>, 600 F. Supp. 2d at 253 (quoting <u>Higgins v. New Balance Ath. Shoe, Inc.</u>, 194 F.3d 252, 264 (1st Cir. 1999)).

With respect to the second element, Minahan must demonstrate that that she was qualified to perform her work with or without a reasonable accommodation. However, her allegations do not indicate that she could have performed her payroll administrator responsibilities from home while she was on medical leave.[17] Therefore, Minahan cannot establish a prima facie case of reasonable accommodation under Mass. Gen. Laws ch. 151B, §4(16). The undersigned thus finds her claims implausible and recommends their dismissal.

## Count IV – Qualified Medical Leave Discrimination

Minahan alleges that the Town and individual defendants discriminated and retaliated against her for taking a leave of absence from her work pursuant to the FMLA, in violation of 29 U.S.C. § 2615. (Docket #62, par. 53). Minahan further alleges that the Town denied her requests for extension of leave, to which she was entitled under FMLA. (<u>Id.</u>, par. 51). Minahan also alleges that the Town used her FMLA leave as a negative factor in an employment decision resulting in her termination. (<u>Id.</u>, par. 52). She asserts that the Town retaliated against her by failing to notify her regarding FMLA leave deadlines; falsely claiming that her absence from

---

[17] Under Massachusetts law, as opposed to the ADA, an employer is only barred from dismissing employees who are "capable of performing the essential functions of the <u>position involved</u> with reasonable accommodation." Mass. Gen. Laws ch. 151B, § 4(16) (emphasis added). Thus, the Court need not address whether Minahan could have been assigned to a vacant position as a reasonable accommodation. <u>See</u> <u>Russell v. Cooley Dickinson Hosp., Inc.</u>, 437 Mass. 443, 454 (2002).

work was unauthorized; and engaging in disciplinary actions including her termination from employment. (Id.). She also asserts that the Town's delay in notifying her of her FMLA Designation Notice caused her harm. (Id., par. 53). Defendants state that pursuant to Minahan's first FMLA leave request, she was given medical leave for twelve work weeks, to which she was entitled. (Docket #69, p. 29). Defendants argue that the Town is not obligated under the FMLA to grant her subsequent requests for extension of her medical leave and therefore did not violate the FMLA. (Id.). Defendants assert that a causal connection does not exist between Minahan's exercise of her FMLA rights and the termination of her employment, and the complaint reflects independent facts for her termination, such as failure to communicate her medical condition and report to the Town. (Id.). Defendants also urge the Court to dismiss the claims against individual defendants because Minahan did not put them on notice with regard to specific allegations and violations of FMLA. (Id., pp. 29-30).

## A.    Prescriptive Rights

The FMLA creates two types of rights: prescriptive and proscriptive. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998). Prescriptive rights are substantive, setting forth an eligible employee's entitlements under the FMLA. Id. at 159. It is a prescriptive right of an eligible employee[18] to be entitled to a twelve week leave within a twelve-month period due to a serious health condition that makes the employee unable to perform the functions of her position.[19] See 29 U.S.C. § 2612(a)(1)(c). An eligible employee who takes FMLA leave

---

[18] The FMLA defines an "eligible employee" as an individual who has been employed by the employer for at least twelve months and has worked 1,250 hours within a twelve-month period. 29 U.S.C.A. § 2611(2)(A). Minahan sufficiently alleges that she was an eligible employee.

[19] The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C.A. § 2611(11). Minahan sufficiently alleges that she had a serious health condition.

is entitled to return to the same position she held before taking such leave, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1).

Minahan asserts that she was denied an FMLA leave by the Town when she made three additional requests to extend her leave. Her first request on December 17, 2010 was properly granted by the Town. Her second request, made on January 13, 2011, specified an extension of leave until April 4, 2011. Her third and fourth requests, made on March 25 and 28 of 2011, sought to extend her leave beyond April 4, 2011, but did not specify when she could go back to work. On March 28, 2011, the Town informed Minahan that her FMLA leave had expired on March 11, 2011.

The Town met its obligations under the FMLA by approving Minahan's first request for leave. Minahan utilized her entire twelve work week leave under the FMLA from December 17, 2010 to March 11, 2011. An employee who exhausts her FMLA leave and does not return to work has no right to reinstatement. See Coker v. McFaul, 247 Fed. Appx. 609, 620 (6th Cir. 2007); Barry v. Wing Mem'l Hosp., 142 F. Supp. 2d 161, 165 (D. Mass. 2001). Hence Minahan has no FMLA claim for her unauthorized absence from work following March 11, 2011.

Minahan also alleges a technical violation of notice requirements under 29 C.F.R. § 825.301(d) due to the month-long delay by which Minahan received an FMLA Designation Notice.[20] "Late or inadequate notices … are not actionable unless they harm the employee." Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 423 (1st Cir. 2014). Minahan merely states that she was harmed by the late notice, but does not articulate any negative consequences of such harm. Moreover, it appears that Minahan sought further leaves of absence

---

[20] In her complaint, Minahan incorrectly cites to 29 C.F.R. § 835.301(d), a provision that does not exist. (See Docket #62, par. 36).

after the expiration of her FMLA leave and was not able to return to work due to her medical condition. In such instances, "an employee is not harmed by late or inadequate notice [because] the employee was incapable of returning to work after the twelve weeks of FMLA leave." Bellone v. Southwick-Tolland Reg'l Sch. Dist., 915 F. Supp. 2d 187, 196 (D. Mass. 2013) aff'd, 748 F.3d 418 (1st Cir. 2014). Therefore, the Town did not violate 29 C.F.R. § 825.301(d) by sending Minahan a late Designation Notice.

## B.    Proscriptive Rights

Proscriptive rights created by the FMLA protect an employee who experiences discrimination and retaliation for exercising her prescriptive rights under the FMLA. Hodgens, 144 F.3d at 159. It is a violation of the FMLA for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA.]" 29 U.S.C. § 2615(a)(1). "The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." Id. To make out a prima facie case of FMLA interference, a plaintiff must show that: (1) she engaged in a protected action; (2) she suffered an adverse employment action; and (3) there was some possibility of a causal connection between the employee's protected activity and the employer's adverse employment action. Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 336 n.10 (1st Cir. 2005); Crevier, 600 F. Supp. 2d at 261. Even though the FMLA does not explicitly contain an anti-retaliation provision, the statute was intended to provide such protection to employees. See Hillstrom, 265 F. Supp. 2d at 126.

Minahan exercised her FMLA rights by making multiple leave requests under the FMLA. She experienced an adverse employment action when she was terminated from employment following her FMLA leave. Minahan has also alleged adequate facts to demonstrate a causal link between her FMLA leave and her termination by the Town. First, there is sufficient temporal proximity between her FMLA leave and termination to suggest a causal link between the two. Minahan left work on December 17, 2010, was granted FMLA leave until March 11, 2011, and was terminated on April 1, 2011. See Hodgens, 144 F.3d at 168 ("close temporal proximity between two events may give rise to an inference of causal connection") (citing cases). Second, the Town's proffered reasons for Minahan's termination conflict with the allegations of the complaint, leading to an implication that these reasons were pretextual. The Town alleges that Minahan was terminated for failing to report to work after leaving on December 17, 2010, failing to adequately communicate with the Town during her absence, and failing to supply medical documentation regarding her absence. In her complaint, Minahan alleges that, on December 17, 2010, she suffered a severe emotional breakdown, was forced to leave work and seek immediate medical attention. Minahan alleged she looked for Caliento and Breault before she left work, did not find them, and then told Bones, who was next in charge, that she had to leave work. Minahan states she notified Caliento and the Town before she left work and that Breault witnessed Minahan leave the building while uncontrollably crying. Minahan states that later that day, Bones delivered Minahan's medical note to Caliento in person. Minahan alleges that on January 13, 2011, she returned an FMLA Designation Form and Certification of Health Care provider to the Town along with her doctor's note, seeking to extend her leave until April 4, 2011. Minahan states that on February 10, 2011, Tranghese confirmed the Town's receipt of

Minahan's doctor's note and, on March 25, 2011, she sent the Town another doctor's note, seeking to extend her leave beyond April 4, 2011.

Therefore, Minahan has sufficiently put forth allegations to satisfy the elements of an FMLA interference claim under 29 U.S.C. § 2615(a)(1) against the Town. She has also sufficiently alleged an FMLA interference claim against the Selectmen, that arm of the Town that made the ultimate decision resulting in Minahan's termination. Thus, the Motion to Dismiss should be denied as to this claim against these defendants.

**C.      Individual Capacity Claims**

Defendants have moved to dismiss the individual capacity claims against defendants Breault, Tranghese, Caliento, Driscoll, and Villamano. As discussed above, the only potentially viable claims against these defendants is for FMLA interference pursuant to 29 U.S.C § 2615(a)(1). Neither the Supreme Court nor the First Circuit Court of Appeals have addressed whether there is individual liability under the FMLA. The Third, Fifth and Eight Circuits comprise the majority approach and recognize that a public agency supervisor may be held liable under the FMLA. See Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 667 F.3d 408, 414-15 (3d Cir. 2012) (citing Modica v. Taylor, 465 F.3d 174, 184 (5th Cir. 2006); Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002)). The minority approach adopted by the Sixth and Eleventh Circuits do not recognize public agency supervisory liability under the FMLA. Mitchell v. Chapman, 343 F.3d 811, 829 (6th Cir. 2003); Wascura v. Carver, 169 F.3d 683, 687 (11th Cir. 1999). Judge Tauro and Judge Woodlock, the only judges of this district to my knowledge who have considered the issue, have agreed with those circuits that have imposed individual liability on public employees. See Chase v. U.S. Postal Serv., No. 12-11182-DPW, 2013 U.S. Dist.

LEXIS 157592, at *45 (D. Mass. Nov. 4, 2013); <u>Mason v. Mass. Dep't of Envt'l Prot.</u>, 774 F. Supp. 2d 349, 363 (D. Mass. 2011) (Tauro, J.).

As explained by Judge Tauro in <u>Mason v. Massachusetts Department of Environmental Protection</u>, the FMLA's plain meaning supports imposing liability on supervisors. <u>Mason</u>, 774 F. Supp. 2d at 363. The FMLA only attaches liability onto employers. 29 U.S.C. § 2617(a)(1) & (2). Under the FMLA, an employer is defined as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). The definition also extends to "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Public agencies are also considered employers under the FMLA. 29 U.S.C. § 2611(4)(A)(iii). Thus, the individual defendants may be liable if they violated the FMLA and "act[ed], directly or indirectly, in the interest of [the Town] to [Minahan]." <u>See</u> <u>Mason</u>, 774 F. Supp. 2d at 362-63.

Under this standard, Minahan has stated a claim against Driscoll and Villamano who, as Selectmen, made the ultimate decision to terminate Minahan. With respect to Tranghese, Breault, and Caliento, Minahan has failed to allege that they played a role in the decision to terminate her employment. While Minahan does allege that she received a letter from Breault on March 20, 2011 notifying her that the Selectmen were considering termination of her employment, no allegation is made that he had any role in that decision. It is also notable that Minahan has failed to allege that Breault had any supervisory role. Thus, the FMLA claim against Tranghese, Breault, and Caliento in their individual capacities should be dismissed.

**Count V – Common Law Claims**

**A.     Breach of Contract**

Minahan asserts that, with an improper motive, without just cause and for economic gain, the Town breached the terms of her employment contract, causing her to suffer damages. (Docket #62, par. 54).  Defendants argue that Minahan does not identify or describe any contract in the complaint and therefore her claim should be dismissed.  (Docket #69, p. 30).  "To properly allege a breach of contract under Massachusetts law, a plaintiff must allege the terms of the contract and what obligations the parties owed to one another under the contract."  Alston., 661 F. Supp. 2d at 124.  In Alston, plaintiffs failed to present factual information about the terms and conditions of the alleged contract they had with their employer, which led to the dismissal of their breach of contract claim.  Id.  Similarly, Minahan fails to present any facts regarding the terms of an alleged contract she had with the Town, and therefore, her breach of contract claim should be dismissed.[21]

**B.     Wrongful Termination in Violation of Public Policy**

Minahan states that she was wrongfully terminated in violation of a uniformly enforced and important public policy.  (Docket #62, par. 55).  According to her allegations, this public policy encompasses the right to free speech regarding her personal safety; her FMLA rights; and refusing to obey Caliento's instructions to potentially violate public policy and/or GAAP principles.  (Id.).  Defendants state that it is impossible to identify an important public policy in Minahan's complaint that would give rise to an exception to the employment at-will rule. (Docket #69, p. 31).

---

[21] Minahan also mentions in Count V that she "relied upon the disciplinary due process in the CBA."  (Docket #63, par. 54).  The complaint contains no allegations about the parties to the CBA, its terms, or its obligations. Accordingly to the extent Minahan relies on "the CBA" in Count V, she fails to plausibly state a claim for breach of contract.

35

Employers in Massachusetts can generally terminate an at-will employee at any time without cause.  See Freeman v. MetLife Grp., Inc., 583 F. Supp. 2d 218, 222 (D. Mass. 2008). The two exceptions to the at-will rule occur when there is a violation of public policy or a breach of the implied covenant of good faith and fair dealing.  Id.  Public policy violations are recognized where an at-will employee is terminated "for asserting a legally guaranteed right …, for doing what the law requires …, or for refusing to do that which the law forbids."  Smith-Pfeffer v. Superintendent of Walter E. Fernald State Sch., 404 Mass. 145, 149-50 (1989).  The public policy exception is interpreted narrowly by the courts so as not to "convert the general rule that 'an employment-at-will contract can be terminated at any time or for no reason at all.'" Id. (quoting Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 668 n.6 (1981)) (alterations omitted). "An employee must be able to point to some clearly-defined and well-established public policy that is threatened by the employer's action." Glaz v. Ralston Purina Co., 24 Mass. App. Ct. 386, 389-90 (1987).

While Minahan's wrongful termination claim is implausible for many reasons, there is one portion that should survive.  I address the claims in turn.  First, GAAP principles[22] cannot serve as a source of public policy, because these guidelines merely establish guiding principles for accounting professionals.  Ethics codes for professional organizations or even regulations governing a particular profession cannot be considered as viable sources of public policy under Massachusetts law, and neither can GAAP principles.  See Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 473-75 (1992).  Second, Minahan cannot invoke the protection of her First Amendment rights, because she did not speak as a citizen on matters of public concern;

---

[22] "The GAAP are an amalgam of statements issued by the [American Institute of Certified Public Accountants] through the successive groups it has established to promulgate accounting principles …  GAAP include broad statements of accounting principles amounting to aspirational norms as well as more specific guidelines and illustrations."  Bily v. Arthur Young & Co., 3 Cal. 4th 370, 382 (1992).

instead she spoke as an employee regarding an internal matter of only personal interest.  See

Connick v. Myers, 461 U.S. 138, 147 (1983); Burrell v. Bd. of Trs. for the Univ. of Me. Sys., 15

Fed. Appx. 5, 7 (1st Cir. 2001).  Therefore, her First Amendment rights are not implicated here

as a source of public policy.  Finally, I find that Minahan should be allowed to proceed on her

wrongful termination claim on the basis of her assertion of her rights under the FMLA.  While

the Massachusetts Supreme Judicial Court has not explicitly addressed the issue, the District of

Massachusetts has previously concluded "that the Massachusetts Supreme Judicial Court would

approve consideration of federal law as a potential source of a well-defined important public

policy of the Commonwealth."  Hutson v. Analytic Scis. Corp., 860 F. Supp. 6, 10 (D. Mass.

1994); see DeSouza v. DRS-Power Tech., Inc., 23 Mass. L. Rep. 469, No. 05-1874C, 2008

Mass. Super. LEXIS 42, at *10-11 (Mass. Super. Jan. 28, 2008) (denying summary judgment as

to plaintiff's wrongful termination claim because plaintiff articulated a violation of public policy

based on federal law).  As stated above in section IV(B), Minahan's allegations that she was

terminated in retaliation for availing herself of FMLA leave set forth a plausible claim of FMLA

interference under 29 U.S.C. § 2615(a)(1).  For those same reasons, Minahan has sufficiently set

forth allegations to satisfy the elements of a wrongful termination claim against the Town and

the Selectmen, that arm of the Town that made the ultimate decision resulting in Minahan's

termination.   Minahan has also stated a claim against Driscoll and Villamano, who, as

Selectmen, made the ultimate decision to terminate Minahan.  With respect to Tranghese,

Breault, and Caliento, Minahan has failed to allege that they played a role in the decision to

terminate her employment.

For all the reasons stated above, Minahan's wrongful termination claim in violation of public policy should be dismissed as to all claims except those relating to her assertion of rights under the FMLA against the Town, the Selectmen, Driscoll, and Villamano.

## C.     Breach of Duty of Good Faith and Fair Dealing

Minahan further states that the Town breached the duty of good faith and fair dealing by exerting coercion and pressure on her to commence pay raises without any documentation, as well as making unlawful threats regarding her job security and criminal violations. (Docket #62, par. 55). When a plaintiff pleads an exception to the at-will employment rule for wrongful termination under both a violation of public policy and a breach of duty of good faith and fair dealing rationales, those claims are dismissed as duplicative. See Freeman, 583 F. Supp. 2d at 222. Furthermore, Minahan's breach of duty of good faith and fair dealing claim should also be dismissed because she has not identified an enforceable contract. See Petricca v. City of Gardner, 194 F. Supp. 2d 1, 5 (D. Mass. 2002) ("A breach of the covenant of good faith and fair dealing exists only where there is an enforceable contract between the parties.").

## Count VI – Tort Actions

## A.     Mass. Gen. Laws ch. 258, §§ 1, et seq.

Minahan asserts that the Town and the individual defendants violated the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, §§ 1, et seq., by engaging in various tortious acts towards Minahan, including misrepresentation, defamation, tortious interference with contractual relations, and negligent infliction of emotional distress, all of which caused her to suffer economic and non-economic damages. (Docket #62, par. 57). Mass. Gen. Laws ch. 258, § 2 provides:

> Public employers shall be liable for injury or loss of property or personal injury or
> death caused by the negligent or wrongful act or omission of any public employee

while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances[.]

"[A] condition precedent to bringing suit under this chapter is the presentment of the claim 'in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose.'" Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 283 (1985) (quoting Mass. Gen. Laws ch. 258, § 4). "Only if the claim is denied or the executive officer fails to settle, arbitrate, or compromise the claim within six months, may the claimant file suit." Id. The MTCA defines cities and towns as public employers. Mass. Gen. Laws ch. 258, § 1. The Selectmen of a town are executive officers of a public employer under the MTCA. Id.

Minahan claims that she sent a presentment letter pursuant to the MTCA on April 21, 2012 by certified mail to the Town, the Selectmen, Breault, and the Massachusetts Attorney General's Office. (Docket #62, par. 56). To stay within the bounds of the statute of limitations, Minahan's MTCA claim can only be traced to the defendants' acts that occurred on or after April 21, 2010, two years before she sent the presentment letter. Because Minahan does not specify which events give rise to her claims under the MTCA, the Court cannot ascertain whether those events are beyond the statute of limitations. Additionally, Minahan does not allege that the Selectmen failed to settle, arbitrate, or compromise her claim within six months of the receipt of the presentment letter, a prerequisite to filing suit under the MTCA. Construing all inferences in favor of the plaintiff, as the Court should on a motion to dismiss, it is plausible that some of the defendants' alleged tortious conduct occurred after April 21, 2010, and the Town refused to settle Minahan's claim. Therefore, Minahan has satisfied the procedural prerequisite to filing the present lawsuit.

However, Minahan cannot prevail on her three intentional tort claims - misrepresentation, defamation, and tortious interference with contractual relations - because intentional torts are not

actionable under the MTCA.  See Spring, 394 Mass. at 284 ("There is no case law in this Commonwealth holding municipalities liable for the intentional torts of their employees."); Bykofsky v. Town of Lenox, No. SUCV201201876, 2013 WL 4106659, at *3 (Mass. Super. July 3, 2013).  Therefore, this Court will only consider Minahan's claim of negligent infliction of emotional distress under the statute.[23]

Minahan asserts that the Town and individual defendants breached the standard of care when they failed to report, investigate, supervise, and adjudicate her claims of harassment, retaliation, age discrimination, and hostile work environment.  (Docket #62, par. 57).  She further asserts that the defendants' malfeasance and nonfeasance was the proximate cause of her emotional distress.  (Id.).  Minahan states that she suffered extreme emotional distress, resulting in severe physical manifestations of mental distress and anxiety.  (Id.).  Defendants argue that individual liability for negligence does not exist under the MTCA, and, therefore, Minahan's claims against individual defendants must be dismissed.  (Docket #69, p. 32).  Defendants further argue that Minahan's negligent infliction of emotional distress claim is implausible, because she has not pled sufficient facts and, further, that it is barred by the Worker's Compensation Act. (Id. at 33-34).

To establish a claim for negligence under Massachusetts law, a tort plaintiff must show that the (1) the defendant owed him a duty, (2) the defendant breached that duty, (3) the breach constituted a proximate cause of the ensuing harm, and (4) the breach caused actual injury." Fithian v. Reed, 204 F.3d 306, 308 (1st Cir. 2000).  In the employment context, negligent infliction of emotional distress claims are barred by the exclusivity provision of the Massachusetts Worker's Compensation Act unless the employee gave written notice to his

---

[23] Defendants argue that Minahan's intentional tort claims do not survive a Twombly/Iqbal analysis.  (Docket #69, pp. 32-33).  However, this issue is moot, since intentional torts are not within the purview of the MTCA.

employer that he was retaining his right of action.[24]  Hinchey v. NYNEX Corp., 144 F.3d 134, 146 n.7  (1st Cir. 1998) (citing Mass. Gen. Laws ch. 152, § 4; Mason, 774 F. Supp. 2d at 374 n. 68.  Minahan has not alleged that she took any steps to retain this right.

Therefore, Minahan's negligent infliction of emotional distress claim against the Town and the individual defendants should be dismissed.

### Count VII – Violations of Constitutional Rights

Minahan asserts that the Town and the individual defendants violated her constitutional rights of free speech under the First Amendment, as well as her property rights, procedural rights, substantive due process rights, and rights to equal protection under the Fourteenth Amendment.[25]  (Docket #62, par. 59).  She specifically asserts that her property rights were violated by the defendants when they deprived her of her constitutionally protected property interest in her public employment and public pension benefits by disciplining her, treating her differently, discriminating, and retaliating against her.  (Id., par. 58).  She also asserts that the defendants deprived her of her substantive due process rights by not providing her with a fair notice prior to the termination of her employment.  (Id.).  She alleges that the Town is liable under 42 U.S.C. § 1983 for employing an unconstitutional and impermissible municipal policy, custom, usage or practice that violated her constitutional rights.  (Id., par. 59).  This policy consisted of terminating her while on disability leave without a reasonable accommodation, in

---

[24] Pursuant to Mass. Gen. Laws ch. 152, § 24, "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right[.]"

[25] Minahan does not elaborate on how her right to free speech under the First Amendment and equal protection rights under the Fourteenth Amendment were violated by the defendants.  Therefore, these claims should be dismissed, because they are merely legal conclusions stated without any supporting facts.  The Court notes that the defendants offer a thorough explanation of why Minahan's claims under the First Amendment should fail under the Iqbal/Twombly standard.  (Docket #69, pp. 36-38).  Defendants also point out in a footnote that Minahan's equal protection claim is not supported by any factual allegations.  (Docket #69, p.38 n.17).

violation of her FMLA rights, as well as retaliating against her and failing to supervise other defendants. (Id.).

42 U.S.C. § 1983 does not create substantive rights, it provides a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law. See D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 44 (1st Cir. 2012). "The essential prerequisites to Section 1983 relief for an alleged violation by a government official of a Constitutional right are (1) that the plaintiff has been deprived of a right, privilege, or immunity secured by the Constitution and (2) that this was done under the auspices of governmental authority." Izquierdo Prieto v. Mercado Rosa, 894 F.2d 467, 470 (1st Cir. 1990).

## A.    Municipal Liability

Defendants argue that the Town cannot be liable on a respondeat superior theory, based on its employees' actions within the course of their employment, and can only face liability based on an impermissible policy, custom, or practice leading to a violation of a constitutional right. (Docket #69, p.41). Defendants also argue that Minahan fails to identify an official policy or custom of the Town and therefore has not established a causal link between any policy or custom and the alleged constitutional violation. (Id.).

To establish a Section 1983 claim against a municipality, a plaintiff must show that the violation of her constitutional rights occurred as a result of the municipality's policy or custom. Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). "A single decision by a municipal policymaker constitutes official policy 'only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" Id. (quoting Pembaur v. City of Cincinnati, 475 U.S.

469, 481 (1986)). "When determining whether a decisionmaker exercises final authority, 'courts must look to state law, including valid local ordinances and regulations, for descriptions of the duties and obligations of putative policymakers in the relevant area at issue.'" Id. (quoting Walden v. City of Providence, 596 F.3d 38, 56 (1st Cir. 2010)). "It is well-settled that municipalities may not be held liable for the constitutional violations of their employees in a § 1983 suit based on a respondeat superior theory of liability." Baron v. Suffolk Cnty. Sheriff's Dep't, 402 F.3d 225, 236-37 (1st Cir. 2005) (citing Monell, 436 U.S. at 691).

The Court agrees with the defendants that the Town can only be liable as a result of violation of Minahan's constitutional rights due to its customs or policies, but not on a respondeat superior theory. Here, Minahan has not pled enough facts to show that violations of her constitutional rights occurred because of the Town's policy or custom. Minahan asserts that the Town's policy consisted of wrongful termination, violation of her FMLA rights, and retaliation. However, one isolated instance of termination is not considered a "policy" within the meaning of a Monell claim. See Canney v. City of Chelsea, 925 F. Supp. 58, 66-67 (D. Mass. 1996) ("One isolated incident, without demonstrating something more – perhaps a pattern of activity repeated over time, or conduct reflective of an official pronouncement – does not, according to the dictionary definition cited with approval by the Supreme Court [in Pembaur v. Cincinnati], a policy make.").

Therefore, Minahan's Section 1983 claim against the Town should be dismissed, because she fails to point to a policy or custom and is thus unable to establish that the Town violated her constitutional rights under 42 U.S.C. § 1983.

**B.      Individual Liability**

With regard to the individual defendants' liability under 42 U.SC. §1983, Minahan's claim is also implausible, because she has not shown that she has a constitutionally protected property interest in her continued employment and pension benefits to satisfy the first prong of a procedural due process violation under the Fourteenth Amendment.[26]  "To maintain a procedural due process claim, a plaintiff must allege 'that the plaintiff was deprived of constitutionally protected property because of defendants' actions, and that the deprivation occurred without due process of law.'"  Senra v. Town of Smithfield, 715 F.3d 34, 38 (1st Cir. 2013) (quoting Rumford Pharm., Inc. v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992)) (alterations omitted).  "In order to maintain a constitutional due process claim arising out of the termination of his employment, a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed."  Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 101 (1st Cir. 2002).  The Court determines the claim of a protected property interest "by reference to state law."  Id. at 102 (quoting Bishop v. Wood, 426 U.S. 341, 344 (1976)).  The First Circuit has held that collective bargaining and contractual agreements could give rise to a reasonable expectation of continued employment.  See Wojcik, 300 F.3d at 101; Chaparro v. Ruiz-Hernandez, 607 F.3d 261, 265-66 (1st Cir. 2010).  Minahan does not point to the existence of any kind of agreement with the Town, or to any state statute, policy, or rule that would entitle her to a reasonable expectation of continued employment.

---

[26] Defendants assume without conceding that Minahan has a constitutionally protected property interest.  However, they assert that Minahan does not allege sufficient facts to show that she was denied adequate process by the Town when she was unable to appear at her termination hearing.  (Docket #69, p. 39).  The Court need not reach the second prong of the Fourteenth Amendment analysis, because it concludes that Minahan does not have a constitutionally protected property interest and is therefore unable to satisfy the first prong.

Therefore, she does not possess a constitutionally protected property interest in her employment, and the defendants did not deprive her of this interest in violation of her Fourteenth Amendment rights.

## C.     Qualified Immunity

Defendants argue that the individual defendants are not liable for violations of Minahan's rights under the First and Fourteenth Amendment, because they are entitled to qualified immunity.  (Docket #69, p. 39-40).

"Assessing qualified immunity at the motion to dismiss stage requires that we evaluate the sufficiency of the plaintiffs' pleadings." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  "The qualified immunity doctrine provides defendant public officials an immunity from suit and not a mere defense to liability." Id.  "For this reason, immunity is to be resolved at the earliest possible stage in litigation." Id.  "In some cases, the doctrine ensures that insubstantial claims against government officials will be resolved before discovery." Id.

The First Circuit follows a two-step analysis for determining whether qualified immunity protects a public official from liability.  See Sanchez v. Pereira-Castillo, 590 F.3d 31, 52 (1st Cir. 2009).  At the motion to dismiss stage, the courts consider "1) whether plaintiff's allegations, taken as true, establish the violation of a constitutional right, and 2) whether the constitutional right was clearly established at the time of the challenged conduct." Id.  The second step of the analysis has two further elements – "[i]t requires us to consider both whether the contours of the constitutional right were sufficiently clear at the time of the alleged conduct and also whether, under the particular facts of the case, a reasonable officer would have understood that his behavior violated that clearly established right." Id.

Minahan's claims of constitutional violations are not adequately pled, because she does not specify which defendants committed which acts that would constitute a violation of her constitutional rights.  See Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004)) ("in a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why").  Accordingly, the Court finds that the individual defendants are entitled to qualified immunity and cannot be held liable under 42 U.S.C. § 1983.

Therefore, Minahan's claims against the individual defendants for a violation of her constitutional rights should be dismissed.

# CONCLUSION

For the reasons stated, I RECOMMEND that the Defendants' Motion to Dismiss be GRANTED as to Counts I, II, III, VI, and VII. I RECOMMEND that the Motion to Dismiss be DENIED as to Count IV with respect to the claims against the Town of East Longmeadow, the Board of Selectmen, James Driscoll, and Enrico Jack Villamano for Family and Medical Leave Act interference pursuant to 29 U.S.C. § 2615(a)(1) and that the Motion to Dismiss be GRANTED as to Count IV in all other respects. I further RECOMMEND that the Motion to Dismiss be DENIED as to Count V with respect to the claims against the Town of East Longmeadow, the Board of Selectmen, James Driscoll, and Enrico Jack Villamano for wrongful termination in violation of public policy with respect to Plaintiff's assertion of rights under the Family and Medical Leave Act and that the Motion to Dismiss be GRANTED as to Count V in all other respects. [27]

*/s/David H. Hennessy*
David H. Hennessy
United States Magistrate Judge

---

[27] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).